No. DA 06-0144

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 253N

IN THE MATTER OF K.B., S.B., and A.B.,

    Youths In Need Of Care.

APPEAL FROM:    The District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DN-04-023,
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Sasha K. Brownlee, Attorney at Law, Hamilton, Montana

    For Respondent:

        Honorable Mike McGrath, Attorney General; Joslyn M. Hunt,
Assistant Attorney General, Helena, Montana

        Michael Hayes, Hays and Hayes, Hamilton, Montana

Submitted on Briefs:  September 7, 2006

Decided:  October 3, 2006

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent.  It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports

¶2     K.B. (the mother) appeals the order terminating her parental rights to K.B., S.B. and A.B.  We affirm.

¶3     The mother has three children, a son, K.B., and twin daughters, S.B. and A.B.  K.B. was thirteen months old when the twins were born.  The twins were born prematurely on October 5, 2005.  The mother is married to K.B. (the father), the natural father of the children.

¶4     On December 21, 2004, the mother brought S.B. to Dr. Steven Wallace's office, because, in her words, S.B. was "not looking right" and was "acting funny."  In fact, S.B. was having seizure activity and was diagnosed with shaken baby syndrome and admitted to the hospital.  S.B. had suffered significant brain injury as the result of abuse by her father, who was subsequently charged with attempted homicide.  Dr. Wallace and Bonnie Collins, a social worker with the Department of Health and Human Services (the Department), later testified that the mother's actions concerned them, because she should have taken S.B. immediately to the emergency room after her husband told her that S.B.

2

had hit her head. Furthermore, at the hospital, she was more concerned about the father being in jail than with S.B.'s well-being. The Department then became involved due to the alleged abuse.

¶5 On January 4, 2005, all three children were returned to the care of their mother. On January 7, 2005, three days later, A.B. was admitted to the hospital after Dr. Wallace observed she had lost two ounces of weight, even though the mother had been informed that it was imperative for A.B.'s health that she gain weight. In response to Dr. Wallace's decision to admit A.B. to the hospital, the mother became openly hostile and belligerent, requiring the hospital to call security and the police. Further, the mother failed to appreciate the seriousness of the fact that A.B. was diagnosed with "failure to thrive," saying "[s]o she lost two ounces, big deal." A.B., while hospitalized, had significant weight gain.

¶6 On February 2, 2005, the District Court adjudicated K.B, S.B. and A.B. youths in need of care and granted temporary legal custody to the Department. The court also ordered the preparation of treatment plans for the mother. Thereafter, during a structured visit with a Department social worker, Liz Pepion, the mother over-fed A.B., causing A.B. to choke and requiring Pepion to administer first aid. Also, the mother spent most of the visit discussing how unfair her situation was, instead of interacting with A.B. Pepion later testified that the mother exhibited additional unsafe behaviors during visits with her children, including swinging A.B. around in her car seat, precariously placing A.B.'s car seat in a chair, and also jerking K.B.'s arm so quickly he was flung backwards.

3

¶7     Under her treatment plan, the mother was required to participate in therapy for her parenting and anger management issues. Dr. John Sisson, Ph.D., concluded that the mother suffers from a severe personality disorder as well as cognitive deficits which, in Dr. Sisson's opinion, prevent the mother from succeeding in long-term psychotherapy or achieving significant behavioral change. Dr. Sisson based his opinion on the mother's ten-year history of unsuccessful involvement with mental health services as well as his own testing and evaluation of the mother.

¶8     In late July 2005, the Department petitioned to terminate the mother's parental rights. On November 8, 2005, the District Court concluded, pursuant to § 41-3-609(1)(f), MCA, that the approved treatment plans had not been successfully complied with and that the mother's conduct or condition was unlikely to change within a reasonable time. The court therefore ordered termination of parental rights.

¶9     On appeal, the mother argues that the District Court erred in finding that K.B., S.B. and A.B. were youths in need of care. A youth in need of care is defined as a "youth who has been adjudicated or determined, after a hearing, to be or to have been abused, neglected, or abandoned." Section 41-3-102(34), MCA. The statutory definition of abuse and neglect includes "the harm that occurs whenever the parent . . . causes malnutrition or a failure to thrive . . . ." Section 41-3-102(21)(a)(iv), MCA. Here a hearing occurred where the District Court was presented with substantial evidence demonstrating that the mother failed to properly respond to S.B.'s injuries; neglected to provide the necessary medical attention and care to A.B.; failed to comprehend or

4

acknowledge the serious medical needs of her children; and continued to interfere with the children's care. The court therefore properly determined, after a hearing where substantial evidence was presented concerning the mother's neglect of her children, that K.B., S.B. and A.B. were youths in need of care.

¶10 The mother also argues that the necessary elements of § 41-3-609(1)(f), MCA, were not met and therefore the District Court erred in terminating her parental rights. Section 41-3-609(1)(f), MCA, requires complete compliance with a treatment plan, as opposed to partial or even substantial compliance. *In re T.L.*, 2005 MT 256, ¶ 14, 329 Mont. 58, ¶ 14, 122 P.3d 453, ¶ 14. The court received considerable testimony, from the mother's therapist and from Pepion, that the mother did not successfully complete her treatment plan. The court was also presented with evidence that the mother failed to address her anger management and mental health problems, and failed to demonstrate that she understands or can meet her twins' special medical needs. Further, the mother resisted changing her behavior and even refused to admit to many of her problems. The court thus concluded that the treatment plans had been unsuccessful and the behavior of the mother would not change within a reasonable time.

¶11 It is appropriate to decide this case pursuant to our Order of February 11, 2003, amending Section 1.3 of our 1996 Internal Operating Rules and providing for memorandum opinions. It is manifest on the face of the briefs and the record before us that the appeal is without merit because the findings of fact are supported by substantial evidence, the legal issues are clearly controlled by settled Montana law which the District

5

Court correctly interpreted, and there was clearly no abuse of discretion by the District Court.

¶12    We affirm the judgment of the District Court.


                              /S/ W. WILLIAM LEAPHART


We concur:

/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ JIM RICE